UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 11-10406-RGS

UNITED STATES OF AMERICA

v.

MARC D. FOLEY

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

January 18, 2013

STEARNS, D.J.

Defendant Marc Foley was named in a 38-count indictment consisting of thirty-three counts of wire fraud and five counts of unlawful monetary transactions for his involvement in a scheme to defraud mortgage lenders in connection with the financing of the purchase of twenty-four condominium units at 135 Neponset Avenue in Dorchester, Massachusetts. Among other criminal acts, Foley falsely represented to lenders that "cash from borrowers" was collected at the closings on the units when, as agreed between Foley and the separately charged seller, no liquid funds were ever collected or requested from the borrowers. At the close of the government's case-in-chief, Foley moved for a judgment of acquittal on the wire fraud counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure, arguing that the government had

failed to establish venue for the prosecution in the District of Massachusetts. The court denied the motion. Foley was subsequently convicted on all counts. Foley now renews his motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) and also moves, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33(a).

**Venue**

Because venue is not an element of the offense of wire fraud, proper venue need only be shown by a preponderance of the evidence. *See United States v. Lanoue*, 137 F.3d 656, 661 (1st. Cir. 1998). Review of the sufficiency of the government's showing is "in the light most favorable to the government and the jury's verdict to determine whether the prosecution met its burden." *Id.* The present motion challenges venue on the same grounds as raised at trial; that is, "the government failed to prove that the charged wire transactions originated, passed through or ended in the District of Massachusetts." Def.'s Mot at 7. The basis for Foley's claim is the contention that the wire transfers traveled through the Federal Reserve Bank of Boston's (FRBB) server located in New Jersey and terminated at the wire room in Citizens Bank in Rhode Island, without having any contact with Massachusetts. *See* Stewart Testimony Tr. at 12-15.

Venue lies where a crime is "committed." U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18. In deciding where a crime has been

committed for venue purposes, courts look to the "nature of the crime," as determined by the "essential conduct elements" of the offense. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279-280 (1999). A crime consisting of distinct parts "'may be tried where any part can be proved to have been done.'" *Id.* at 281, quoting *United States v. Lombardo*, 241 U.S. 73, 77 (1916). The "essential conduct" prohibited by the federal wire fraud statute is "the misuse of wires as well as any acts that cause such misuse."[1] *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002). Thus, in a wire fraud case, venue is established "where the wire transmission at issue originated, passed through, or was received, *or from which it was orchestrated*. . . . In other words, venue may lie only where there is a direct or *causal connection* to the misuse of wires." *Id.* at 349-350 (emphasis added); *see also United States v. Kim*, 246 F.3d 186, 192 (2d Cir. 2001) (venue for wire fraud prosecution proper in district from which defendant caused communications to be transmitted); *United States v. Harris*, 2012 WL 2402798, at *2 (D. Mass. June 26, 2012) (same, citing *Pace*, *supra*).

---

[1] 18 U.S.C. § 1343 provides: "Whoever, having devised or intending to devise any scheme . . . to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . . transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both."

Here the jury would have been warranted in finding from the testimony of Michael Stewart, a keeper of records for the FRBB, that the wires passed into Massachusetts. Although the lender funds were routed to Citizens Bank in Rhode Island, Citizens Bank's wire account is held at the Federal Reserve Bank in Boston. Stewart Testimony Tr. at 12. Each of the wire transfers from Foley's IOLTA account "settled at the account of Citizens Bank held at the [FRBB]." *Id.* at 11. This account was credited via an electronic message sent from an "interdistrict accounting system" that is "integrate[d]" with the wire system. *Id.* at 14. Because Citizens' account at the FRBB was simultaneously credited for the wire transfers, it is reasonable to draw the conclusion that the wires passed and cleared through the FRBB. *See United States v. Carpenter*, 405 F. Supp. 2d 85, 91 (D. Mass. 2005) (Massachusetts was the proper venue for wire fraud charge where wire was sent from bank in New Hampshire to account in Pennsylvania because the wire cleared through the FRBB).

Moreover, because Foley's acts in Massachusetts were essential to the setting in motion of the wire transfers of the purchase money, whether an electronic pulse was or was not transmitted within or across the territorial boundaries of Massachusetts is an academic point. Foley's acts in Massachusetts caused the wires foreseeably to be used in furtherance of the fraudulent scheme. Thus, venue properly lies in Massachusetts.

**New Trial**

Rule 33(a) authorizes a trial court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim.P. 33(a). The court may consider both the weight of the evidence and the credibility of the witnesses in deciding a motion for a new trial. *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). However, "[t]he remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996) (citation omitted).

Foley argues that a new trial is merited because "government counsel argued during its principal closing and rebuttal argument that Sean Robbins testified that Mr. Foley told him in March 2007 that he (Foley) knew in December 2006 . . . that no checks would ever be forthcoming from Lisa Reed or Mass Lending." Def.'s Mot. at 2. According to Foley, this argument misstated the evidence and gutted the heart of his defense, namely that he believed in good faith that the borrowers would deliver checks after the closings. *Id.*

The contested testimony was elicited by the government on its redirect examination of Sean Robbins (a cooperating witness who had worked as an associate in Foley's law office):

> United States: What did the defendant tell you in that March '07 conversation about whether or not he knew checks were coming?
>
> Robbins: He said he found out that no checks had come, and – about the second week, and he yelled at Nancy Molinari for disbursing, despite the fact there were no checks.

Robbins Redirect Tr. at 15-16. Foley objects to government counsel's following characterization of Robbins' testimony during closing argument:

> [T]hat's the conversation in which defendant Foley said, I knew by the second week there were no checks. Now, I submit to you that the evidence in this case and what you know from the evidence is from day one Mr. Foley knew there were not going to be any checks. But at a minimum, he has admitted to Sean Robbins that he knew there were no checks from at least the second week.

Trial Tr. (Day 7) at 14-15.

During his closing argument, defense counsel, as previously noted, told the jury that the United States, in its closing argument, stated that "Sean Robbins testified that Mr. Foley told him in March that he had known in December no checks were forthcoming. . . . Mr. Robbins never testified that Mr. Foley had told him in December that he knew no checks were forthcoming." *Id.* at 40-41. On rebuttal, government counsel responded: "You were told [by defense counsel] that Mr. Robbins didn't testify about that conversation on the way to get coffee in March and what Mr. Foley said to him. If you took notes, I would suggest you look near the end of Mr. Robbins' testimony." *Id.* at 73-74.

6

The pertinent question is whether the government's comments characterizing Robbins' testimony in closing argument were inaccurate at all. Government counsel stated, insofar as pertinent, that Foley told Robbins that he "knew by the second week there were no checks." This is entirely consistent with Robbins' testimony that Foley had told him in March that he knew by the second week after the closings began that "no checks had come." After reminding the jury of Foley's statement to Robbins, government counsel then asked the jury to infer from all of the evidence that Foley knew from the beginning that no money was ever going to be collected from the borrowers. "All of the evidence" would have included Lisa Reed's testimony that Foley had told her that he had "papered the files" with supposed "Disbursement Authorizations" to disguise the fact that no cash had been paid by borrowers and that his "butt was on the line." There was also evidence in the record that Foley himself, in previous schemes with Reed, had purchased units in other buildings on his own account, and had delivered checks to the closing attorney with the understanding that the checks would never be cashed.

Government counsel then returned to Robbins' testimony to argue that, "at a minimum" – that is, even if the jury was not persuaded that Foley knew from the outset that no checks would be received – Foley was aware that "there were no checks" by the second week of closings (and yet did nothing to set matters right other

than to make a panicked offer to sell the law firm to Robbins). "Where the defendant has presented a defense . . . the government is permitted to discuss competing inferences from the evidence on the record." *United States v. Glover*, 558 F. 3d 71, 77 (1st Cir. 2009). That is what happened here.

Foley's claim of misconduct by government counsel on rebuttal is especially puzzling in light of the fact that it was defense counsel who misstated the government's arguments to the jury, erroneously asserting that government counsel had said that Robbins had testified that Foley admitted that he knew in December no checks were forthcoming. After defense counsel denied that Robbins had so testified, government counsel on rebuttal only asked the jury to consult their notes on Robbins' testimony. If any damage at all was done to Foley's good faith defense during this exchange, it was defense counsel who wielded the meat axe.

Even assuming that government counsel had injected some ambiguity regarding Robbins' testimony into the trial, the error would have been harmless. A statement of fact that is "mistaken or unsupported by any evidence . . . alone is insufficient to reverse a conviction absent a showing of prejudice." *United States v. Gentles*, 619 F.3d 75, 81 (1st Cir. 2010) (internal quotation marks and citation omitted). The First Circuit "has fashioned a three prong test for examining whether the prosecution's misconduct 'so poisoned the well' that the trial's outcome was likely affected, thus

warranting a new trial." *United States v. Joyner*, 191 F.3d 47, 54 (1st Cir. 1999). The three prongs are: "(1) whether the prosecutor's conduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case." *Id.*

With regard to the first prong, the government's alleged mischaracterization of Robbins' testimony occurred but once during closing argument. Government counsel's reference to Robbins' testimony consisted of only a few sentences in twenty-seven pages of closing argument and eleven pages of rebuttal. *See United States v. Rodriguez*, 675 F.3d 48, 62 (1st Cir. 2012) (prosecutor's allegedly improper statements consisting of only a few sentences in twenty-six pages of closing argument were "isolated and brief"). Moreover, even if Foley's interpretation of government counsel's statements were credited, the misstatements would still not amount to a *deliberate* misrecollection of Robbins' testimony. *See Joyner*, 191 F.3d at 54.

As to the second prong, the court instructed the jury emphatically at the opening of the trial and before and after closing arguments that statements and arguments by lawyers are not evidence. In response to Foley's objection that the government had misstated Robbins' testimony, the court gave a strong cautionary instruction directly addressing the conflict as framed by Foley and instructed the jury that they must

decide whether Robbins testified to an admission by Foley that he knew no funds would be forthcoming.  Foley did not object to the court's instruction.  *See id.* at 53-54 (after closing argument, "jurors were left with a situation in which government counsel said that [a witness] testified a certain way, and defense counsel's clear assertion that she did not."  The court's instruction to the jury "(1) that arguments of counsel were not evidence; (2) the jury's recollection of the evidence controlled; and (3) that any statement of counsel conflicting with its recollection should be ignored" was sufficiently curative.).

Finally, with regard to the third prong, it is unlikely that any prejudice would have survived the court's curative instruction.  *See United States v. Watson*, 695 F.3d 159, 169 (1st Cir. 2012) ("[T]he district court limited the risk of any residual prejudice by strongly cautioning the jury that counsel's closing arguments were not evidence, and directing the jurors to base their verdict solely on the evidence as they remembered it.").  The evidence against Foley was very strong.  Included in the evidence demonstrating that Foley acted intentionally – in contradiction of his good faith defense – was testimony from numerous buyers that Foley never asked for any "cash from borrowers," testimony from the seller of the properties that Foley had agreed in advance of any closings that no funds would be collected from borrowers, the fabrication by Foley of so-called "Disbursement Authorizations" improperly

netting loan closing proceeds to prevent lenders from recognizing that funds were not being collected from borrowers, a false paper trial created by Foley in which he drew checks on his IOLTA account and redeposited them as "Proceeds from Borrowers," and serial material misrepresentations on the HUD-1 Settlement Statements that Foley sent or caused to be sent to lenders.

## ORDER

For the foregoing reasons, defendant's motion for judgment of acquittal or, in the alternative, for a new trial is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE