UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 11-10406-RGS

UNITED STATES

v.

MARC D. FOLEY

MEMORANDUM AND AMENDED ORDER
ON VICTIM RESTITUTION

November 16, 2015

STEARNS, D.J.

Attorney Marc D. Foley was convicted by a jury of thirty-three counts of wire fraud in violation of 18 U.S.C. § 1343, and five counts of money laundering in violation of 18 U.S.C. § 1957.  Foley's conviction arose out of his participation in a mortgage-financing fraud involving the purchase by straw buyers of condominium units in a converted apartment building on Neponset Avenue in Dorchester, Massachusetts (the Neponset Building). Foley's role in the scheme included the preparation and submission of fraudulent documents on which the lender relied in approving the loans.

Following the jury verdict, this court sentenced Foley to serve a term of 72-months' imprisonment, followed by 36 months of supervised release. Foley was also ordered to make restitution in the amount of $2,080,100 to

Taylor, Bean & Whitaker Mortgage Corporation (TBW), and an additional $118,104 to Argent Mortgage Corporation (Argent). *See* Mandatory Victim Witness Restitution Act, 18 U.S.C. § 3663A (MVRA).

The Court of Appeals for the First Circuit affirmed Foley's conviction. The Court, however, vacated the restitution award to Argent, and remanded the award to TBW for reconsideration of three issues: the extent to which restitution on all properties should have been offset by principal repayments made by some borrowers; a redetermination of the amount of restitution that should have been awarded for Unit 5 of the Neponset Building; and whether TBW was the proper recipient of a restitution award involving Units 2 and 32 of the Neponset Building. Following the First Circuit's guidance, the court makes the following findings and rulings.

## DISCUSSION

Pursuant to 18 U.S.C. § 3663A(a)(1), when sentencing a defendant convicted of fraud, "the court shall order . . . that the defendant make restitution to the victim of the offense," either ordering the return of the victim's lost property or, if a return of all or part of the property is "impossible, impracticable or inadequate," the payment of an amount equal to the value of the property, offset by "the value . . . of any part of the property that is returned."

**Units 2 and 32**

Foley argues that TBW is not entitled to restitution for Units 2 and 32 of the Neponset Building because it no longer holds the principal mortgage on the units, and the Government has been unable to identify the current owners of the mortgages.  The Government counters that, while the first mortgages on Units 2 and 32 were sold to third parties prior to foreclosure, TBW still possesses *second* mortgages on both properties.  The Government consequently requests restitution only for the *second* mortgages, adjusted by any principal repaid on each secondary loan.

For Unit 2, the Government calculates the amount of the second mortgage as $57,500, less principal repayments of $666.21.  For Unit 32, the Government calculates the amount of the second mortgage as $27,500, less $33.97 in principal repayment.  The court will accept the Government's calculations and reduce the restitution award to TBW for Units 2 and 32 from $318,000 in restitution to $84,299.82.

**Unit 26**

The Government states that, on further review, it has discovered that the first mortgage on Unit 26 of the Neponset Building, like the first mortgages on Units 2 and 32, was sold to a third party prior to foreclosure

with TBW retaining a second mortgage.[1]   Again consistent with the Government's calculations, the court will reduce the restitution award to TBW for Unit 26 from $104,500 to $22,966.55, reflecting a principal amount of $23,000 less the repayment of $33.45.

**Unit 5**

The parties agree that no restitution should be awarded for Unit 5. Therefore, the court will withdraw the restitution award of $67,600 to TBW for Unit 5.

**Unit 41**

This court initially awarded restitution to TBW for Unit 41 in the amount of $150,500.   However, the Government now reports that TBW's records indicate that the first and second mortgages on Unit 41 have been "paid in full." Accordingly, the court will eliminate the restitution award of $150,500 for Unit 41.

**Reduction of Restitution for Payments Made Toward Principal**

Foley requests a reduction in restitution commensurate with the payments made against the principal by each borrower (consistent with the instruction of the First Circuit).   Foley suggests that it would be "too

---

[1] Unit 26 did not figure in the First Circuit's remand with instructions, but is commendably brought to the court's attention by the Government. The same is also true with respect to Unit 41, *infra*.

complicated and lengthy a process for the Government to track down and process the numbers," and therefore proposes the cancellation of the restitution award in its entirety. The Government, however, has submitted an amended request for restitution with an accounting of the payments toward the principal of the mortgages on each of the Neponset units. In addition to the reductions indicated for the units previously discussed, the Government calculates the principal repayments as $525.23 for Unit 1, $287.83 for Unit 3, $135.38 for Unit 4, $1,718.24 for Unit 6, $1,709.81 for Unit 21, $2,348.49 for Unit 23, $33.97 for Unit 31, $30.55 for Unit 33, $9.40 for Unit 41,[2] $381.59 for Unit 42, $25.32 for Unit 43, and $676.97 for Unit 46, for a total of $7,782.78. The court will adopt the Government's calculations.

### Reduction Based Upon Co-Defendant Sean Robbins' Restitution Payment

This court ordered that restitution be paid jointly and severally by Foley and the other responsible defendants. Foley notes that co-defendant Sean Robbins has paid $2,650 in restitution to TBW, and argues that a corresponding reduction in the restitution award should be made. The court

---

[2] The Government states elsewhere, however, that Unit 41 was in fact paid in full. The suggested additional reduction for Unit 41 is either an error or assumes a gain to TBW over and above the value of the mortgage(s). In any event, the sum is too trifling to be material.

agrees. *See United States v. Scott*, 270 F.3d 30, 52 (1st Cir. 2001) (when defendants are liable jointly and severally, "each defendant's liability ends when the victim is made whole").

### Foley's Additional Arguments

Foley makes several arguments as to why he should not be required to pay any restitution to TBW.  Foley points out that TBW is bankrupt, and has no "successor entity or parent company." Def.'s Mem. at 11. Foley contends that his fraudulent acts did not cause TBW's bankruptcy, which he blames on the alleged malfeasance of TBW's former chairman, Leo Farkas.  Foley relies ultimately on the proposition that "restitution is inappropriate . . . where a bankruptcy or default, unrelated to the defendant's conviction(s), occurs." Def.'s Mem. at 13.

It is true that Foley's crimes were not the proximate cause of TBW's bankruptcy.  The Government, however, has not requested restitution on that basis, but only seeks the repayment of the actual losses incurred on loans that TBW made in reliance on Foley's fraudulent documents.  The appellate cases do not hold that restitution to an entity in bankruptcy is inappropriate absent proof that a defendant's fraud caused the entity to fail; they hold that a defendant is not liable for restitution where his actions did not foreseeably cause any *losses* whatsoever to the third party.  *See, e.g.*, *United States v.*

6

*Cutter*, 313 F.3d 1, 8 (1st Cir. 2002) (debtor in bankruptcy was not a victim of defendant's criminal conduct because defendant did not proximately cause debtor's loss); *United States v. Walker*, 896 F.2d 295, 305-306 (8th Cir. 1990) (defendants did not owe restitution to company *employees* where defendants' fraud did not proximately cause the company's bankruptcy or the ensuing job losses).

Foley also relies on *United States v. Paradis*, 219 F.3d 22, 25 (1st Cir. 2000), for the broad proposition that "bankruptcy defeats victim status." Def.'s Reply at 4. While Foley's reading of certain dicta in *Paradis* is not implausible, the ultimate import of the decision is overstated. In *Paradis*, the defendant stood convicted of money laundering in connection with a scheme to conceal the assets of a third party from the Bankruptcy Court, the bankruptcy trustee, and the creditors in the bankruptcy proceeding. The First Circuit held that the bankruptcy trustee, although he may have been a "victim" of bankruptcy fraud, was not a victim of the money laundering per se; moreover, the Government had failed to produce "evidence of creditors who filed claims that went unpaid," and were thereby qualified for treatment as "victims" of the money laundering scheme. 219 F.3d at 25. Nothing in *Paradis,* however, suggests that a bankruptcy trustee can *never* be a victim of a fraud entitled to restitution. It is of more than passing significance that

the bankruptcy trustee in *Paradis* was not acting as a successor entity to a victim otherwise entitled to restitution. That distinction proved decisive in the earlier case of *United States v. Vaknin*, 112 F.3d 579, 591 (1st Cir. 1997), *abrogated on other grounds by United States v. Anonymous Defendant*, 629 F.3d 68 (1st Cir.2010), where the FDIC "step[ped] into the shoes" of a failed bank as insurer and receiver, and therefore was entitled to seek restitution on behalf of the failed bank.

Here, the Plan Trust (and the bankruptcy trustee as its representative) stands in the shoes of TBW. The Plan Trust Agreement specifies that "the Plan Trust shall be the successor to the Debtors . . . for the purposes of §§ 1123, 1129, 1142 and 1145 of the Bankruptcy Code and with respect to all Causes of Action and other litigation-related matters." Def.'s Reply, Ex. A, at 26. Moreover, as the Government notes, TBW continues to exist as a legal entity for the purpose of gathering assets on behalf of the Plan Trust, and as such, is the appropriately designated "victim" for purposes of restitution.

**Unclean Hands**

In the alternative, Foley argues that TBW is an unworthy victim because it "should . . . not have been around to handle *any* loan with *any* borrower." Def.'s Mem. at 14. (The allusion is to the alleged crimes of Farkas, its former Chairman, whom Foley blames for the bankruptcy). Foley

concedes (as he must) that "the trial did not establish that TBW conspired or participated in this particular . . . fraud." Def.'s Mem. at 14. In any event, Foley is estopped from raising the argument that TBW "was either complicit or at least wilfully blind to any fraud," *id*. at 15, by the restitution statute itself: "A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim." 18 U.S.C. § 3664(l).[3]

### The Statutory 90-Day Deadline

Foley notes that this court issued a provisional order of restitution on December 20, 2012, granting the Government 90 days to "answer the question [Foley's counsel] raises, which is who should this restitution be paid to if in fact the mortgage entity no longer exists." 12/20/2012 Hearing Tr. at

---

[3] Foley's attempt to invoke the rule of lenity is no more persuasive in this regard. The rule of lenity counsels that "grievous" ambiguities in a criminal statute are to be resolved in favor of the defendant. *Muscarello v. United States,* 524 U.S. 125, 138-139 (1998). Foley maintains that the term "victim" as it is used in 18 U.S.C. § 3663A is sufficiently ambiguous to justify the exclusion of TBW from victimhood status. As applied in this case, however, the term "victim" is unambiguous. When a defendant obtains a loan from a bank or lending institution by fraudulent means, the lender is entitled to restitution for any losses suffered on the loan. *See Robers v. United States*, 134 S. Ct 1854, 1859 (2014).

37-38.  Foley maintains that because the Government did not nominate a substitute entity for TBW within the 90-day period, the court "has the power to waive restitution" as a sanction for the Government's failure to comply "as this court had ordered under 18 U.S.C. § 3664(d)(5)."  Def.'s Mem. at 17.  The Government responds that Foley waived this argument by failing to raise it on appeal.  In any event, the issue is not one that needs be resolved:  "The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution."  *Dolan v. United States*, 560 U.S. 605, 611 (2010).

**Total Restitution Due**

Adjusting the initial restitution order by the reductions ordered by the First Circuit, those volunteered by the Government, and (where approved) those requested by Foley, the court calculates a figure of $1,536,333.59.  The Government, however, reports that current documentation from TBW, with the proposed adjustments, supports a lower figure of $1,036,111.57.[4]  The

_____

[4] Although the Government does not explain why TBW's estimated losses decreased so substantially (even after accounting for the proposed adjustments), the court surmises that the discrepancy is explained by TBW's sale of the first mortgages on nine of the Neponset property units before the scheme collapsed.  *See* Gov't Mem. at 5.  Foley does not dispute the Government's revised calculations in this regard.  Def.'s Reply at 3 n.1.

court will adopt this lower figure, less the $2,650 in restitution previously paid by codefendant Robbins.

## ORDER

For the foregoing reasons, defendant Marc D. Foley is ordered to pay restitution in the amount of $1,033,461.57, payable to Taylor, Bean & Whitaker or, in the alternative, to the Taylor, Bean & Whitaker Plan Trust.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE